May it please the court, Don Verfurth representing the appellant in this case, Titan Construction Company, against the Mid-Continent Insurance Company, the appellee in this case. What does Titan have in this case now that there's been an assignment of its interest to the union? Your Honor, I'll answer the question. I should say I'd like to reserve five minutes for my final rebuttal. Titan was the way it worked was Williamsburg Condominium Association sued Kennedale Vista, which was the developer of the condominium project. They in turn sued Titan. The National Union Insurance Company had certain policies for Kennedale, and as part of the settlement, National Union paid for Kennedale's liability as well as Titan's liability against Williamsburg Condominium Association. And then Titan assigned any rights it had against its insurance carrier, Mid-Continent, to Kennedale. And now through the name of Titan, National Union is exercising those rights because it actually paid for Titan's liability. So Titan really is the nominal party here? It is the nominal party, Your Honor. And this is essentially a segregation sort of a deal? It is, Your Honor. Let me just follow up on that, if I may. As I understand it, National Union has stipulated to not pursuing its claims against Mid-Continent under what I'll call the Mid-Continent policies. Is that correct? Your Honor, what happened was National Union had policies that were issued to Titan and policies that were issued to Kennedale. The policies that were issued to Titan were the ones that were sued by Mid-Continent. And those policies, as part of the settlement, there was basically National Union, under only those policies, dropped any claim for coverage under the Mid-Continent or reimbursement from the Mid-Continent. So in other words, there are two sets of policies we're talking about here. You believe that the stipulation was clear that it only referred to what I'll call the first set of policies, but that the second set of policies were untouched by the stipulation? That's correct. And the stipulation actually specifically issued the, listed the policies, and it specifically said that it doesn't impact any other policies besides those that are listed in the stipulation. We don't have the settlement agreement, but we have to assume that the stipulation is consistent with the settlement agreement upon which it was based. And did National Union assign the Titan claims, as indicated, or was that a misunderstanding? I think there was, did Kennedale assign the claims? Yeah. No, Your Honor, they didn't. It's more by way of segregation. Okay, so it's a straight segregation issue. Yes, Your Honor. And the issue here is whether there is coverage under the Mid-Continent policies for this liability. And it's a two-step process. The first step, and this is the step that the District Court focused on, and that is whether there was an occurrence or not. The second step is whether there is any exclusions in the Mid-Continent policy that would preclude coverage. And that distinction, the two steps, are important because the burdens are different. Before we get to that, I just want to be sure. I gather then that, from your perspective, Titan can continue to litigate under 43B because it doesn't require National Union to be substituted as a party. Is that right? That's correct. As I said, it's a two-step process. The first step is to determine whether there's an occurrence or not, and that's what the District Court focused on. And then the second step is it shifts the burden to Mid-Continent to show whether there's any exclusion or not. Do you believe that the law in Washington is clear enough on this point, or is this the kind of an issue that perhaps should be certified to the Washington Supreme Court? I think the Washington Supreme Court has spoken. In fact, the Ninth Circuit in the DeWitt case specifically, I think it was in the concurring opinion, said that the highest court of the state of Washington has already ruled on whether there can be an occurrence with regard to a construction defect case. Which Washington case was that to which it was referred? That was the Yakima Cement Products v. Great American. On that question, it struck me that the District Court here discusses a lot of cases, and this is a conscientious district judge. Yakima is not in that discussion. Was Yakima cited to the District Court? Your Honor, I'm not sure. I can't remember where it was cited by the appellee. I do not think it was cited by the appellate. But this is de novo, Your Honor. I looked back through and I couldn't find it, but, you know, excerpts are unreliable in my eyes or sometimes unreliable, too. And I'm not sure all the briefs were actually submitted as part of the record. Some of them were. Certainly the attachments to the briefs are not part of the record. But I just have a sneaking suspicion that the district judge here was not alerted to the Yakima case. That may be, Your Honor. The focus was on the occurrence at the district court, but I'm not sure the court looked at Yakima Cement. But since this court looks at it de novo, the court can look at the Yakima Cement case. Although I have to say I'm a little unhappy if, and I think the district judge has a right to be unhappy, if what you now regard as the controlling case was not brought to her attention. Very well, Your Honor. If I may comment on the Yakima case, it was basically the ruling of the court was that there is an occurrence, even though there is an intentional act, and it's an accident and then therefore an occurrence, if it is unforeseen and undesigned and unexpected. And so the volitional act, it separates out from whether the, in this case, a subcontractor in the Yakima case, whether they were acting volitionally, because they're obviously acting volitionally. They're doing whatever they're doing. But did they foresee or did they expect the consequences? And in that case, the court said no. And that case dealt with the defective concrete panels that had to be removed, refabricated, and repaired in order to, as the remedy. This court, as I mentioned a few minutes ago, looked to Yakima Cement. This was in the DeWitt case versus Charter Oak. Fire insurance company looked to this case and said that that was the law in Washington and that the failure to perform contracted work properly was an occurrence and a subcontractor's unintentional mismanufacture of a product is indeed an accident. And in that particular case. The issue here, because it's a subcontractor, is that why it escapes the exclusion? There are what are called the business risk exclusions, and that's sort of the second step of the process. And I think that's sort of what a number of the cases that were cited by McContinent focus on. And one of those business risk exclusions is the your work exclusion. And that has an exception for work done by subcontractors. In addition, the other business risk exclusion is the your product exclusion. And in this particular case, the McContinent policy has an exception for real property. And under the Condominium Act, these condominiums are real property. And that's what's probably the most important about all of the cases that were cited by McContinent, was that in all of those cases, the Washington cases at least, the court was actually focusing on the exclusions. In the Yakima Cement case, in the DeWitt case, and then there was also another case, the Mutual of Enumclaw case versus Patrick Archer, which was a Division I of the Court of Appeals case. And in all those cases, they found an occurrence. But they also talked about the fact that the business risk exclusions might apply. And, in fact, that is where you hear the comments that insurance is not meant to be a performance bond. The same thing is true of a number of the foreign cases which are cited by McContinent. Because the same thing, the court was looking at the exclusions. And I think there's a great quote from the Wisconsin Supreme Court in the American Girl case, which was one of the cases cited by the amicus brief in this case here in the appeal. And it was commenting on whether there was an occurrence in a construction defect case. And it said, it's not that they're not occurrences. It is because of the business risk exclusions. And then it went on to say that the distinction has been overlooked and resulted in some regrettably overbroad generalizations about CGL policies in case law. And I think that's exactly what's happened in Washington. If you don't look at the fact that in Washington, again, the court is talking about the exclusions. And, for instance, here, I'd like to talk about the McContinent's Your Product exclusion and the whole concept of what is the insured's own product. In this particular case, there's a definition of product, the insured's product. And it has this exception for real property. And so what we have here is we don't have the product. The condominiums are not the product of McContinent, excuse me, of Titan. So all of the, both the exclusions that talk about an exclusion for damage to your product or rising out of your product, that doesn't apply, nor do the general principles that they talk about. Now, the district judge didn't reach the question of exclusions, correct? She did not reach them. She said this is not an occurrence, and therefore I don't need to reach that. What about the exclusion that excludes if the insured, at the time of taking out the insurance, had some reason to know about the problem? We believe, Your Honor, that there is insufficient information to show that McContinent had a problem. That that evidence, which was a single line in a, excuse me, a single line in the minutes of one homeowner's association, was revealed for the first time or showed up or was used, I should say, in the briefing, in the reply, excuse me, the reply brief of the summary judgment motion below. So we didn't respond to it below. Was it in the record? Yeah, it is in the record. It was in the record there, and it's in the record here. But what And is it admissible evidence as a business record? I would argue that it's not admissible evidence. Not a business record? I don't think it's a business record, and McContinent has not made any argument in any of its papers that it is admissible as a business record. Well, my problem with this one is the district judge hasn't had a shot at that question. No, it was in front of the district court, but No, I'll say it this way. A district judge had a shot at it, but the way the district judge decided the case, this was irrelevant, and the district judge has not said one thing one way or the other about it. Exactly. But even if the court considers it, what we have here is a reference to a bathtub leak, and we have the reference to resealing or recoating the concrete to prevent water penetration. If you go back to the facts of this case and you look at what the damage is that was claimed by the homeowners association, it's not a bathtub leak, and it's not just water seeping into the concrete. There is dry rot to the gypsum board. There is multiple types of damage, and it is not the damage that is mentioned in these homeowner minutes. So even if the homeowner minutes were admissible, which we believe they are not, it still doesn't rise to the level to say that Titan expected or knew that there was damage at the time of the inception of the policy. We often say trial counsel. Obviously, there was no trial, but were you counsel? Yes, I was, Your Honor. I'm going to come back to the Yakima cement question. Do you recall one way or the other whether you cited Yakima cement? I believe, I mean, we went through, I went through back and looked, and I don't see it in the briefs. I don't know whether it was discussed at the, I can't remember now whether it frankly was discussed during the summary. It shows up most prominently in the papers in front of us in your reply brief. It does, Your Honor. It's there in your opening, but it only really comes to the fore in your reply. Yes, and it was also mentioned in the amicus brief filed by the contractors association. Verfurth, is that the way it's pronounced? Verfurth. Verfurth, okay. What is that? What kind of a name is that? German. German, okay. From Dusseldorf. Okay. Mr. Verfurth, it seems to me that what you're asking is that this court determined that a failure of a subcontractor, because Titan was the general. That's correct. To adequately perform the subcontract on the Williamsburg condominiums is an occurrence under the Yakima cement case and therefore would be covered by the mid-continent policy unless an applicable exclusion applies. That there's a question of fact on the water damage and whether Titan knew about this at the time it bought the policy from mid-continent. That's a question for the trial court. And that the trial court never got to the exclusions. So you'd want us to demand, I think, to the trial court, holding that an occurrence can be this failure to perform by the sub, but the issue is whether an exclusion applies that would conclude coverage under the mid-continent policy. Your Honor, you articulated the issues perfectly. In terms of what we want, I think at this point the mid-continent has said that they have presented apparently to the court, to the appellate court, all the evidence they have, and they have asked this court to look at whether or not the exclusions apply. To the extent the court believes that it has enough evidence to do so, we are comfortable with the appellate court making that determination. The court has the discretion to do that under case law, both in the Ninth Circuit and in other circuits, as long as it's been fully developed and there's no question of fact. Obviously, if there's a question of fact, it has to go back to the district court to take evidence. But we believe if this is all the evidence that mid-continent has on the exclusions, then we believe that none of those exclusions preclude coverage, and that none of the evidence that they presented rises to the level of a question of fact, and therefore this court can decide that issue. I see my time is close to what I've reserved, so. Okay, so why don't we open the other side and then you'll have a chance to respond. Thank you, Your Honor. May it please the Court, Counsel, my name is Scott Miller and I represent Mid-Continent. Your Honor, I was also at the summary judgment, and so any questions, I think Mr. Verfurth and I could address those directly. First of all, I think we need to take a step back and realize that contrary to the arguments being made by National Union, and let us not mistake that Titan doesn't have a dog in this fight. Titan is not a party. It has assigned all of its claims, excuse me, it was a party, but it's assigned all of its claims, and as Judge Peckman's summary judgment opinion indicated, it was her impression that there was an actual assignment between the declarant Kennedale and National Union Fire. Your opposing counsel indicated that we were really talking here, though, about two different sets of policies. Do you dispute that? I don't know, and so I guess I have to dispute it because the issue has never been brought up until just now. It does appear that you had two different people, two different entities ensuring this work. So unless there's some evidence in the stipulation that it was intended to include the universe of policies issued by everyone, would there not in fact be two sets of policies? All issued by National Union Fire, which was a named party and is a named party in the declaratory judgment action, whether they issued policies to one or several parties, they are the party. But weren't there some policies that were excluded, though, counsel? Didn't they specifically state in the stipulation that it was not intended to include certain policies? I would disagree. How would you characterize it? It's that clear. My characterization is that National Union Fire was named as a party because in the declaratory judgment action we're trying to resolve all claims that could be addressed, and that National Union Fire had an obligation at that point, if they had a claim, to submit it. Instead, what they have done is tried to wear two hats at the same time. One is as subrogee of Kennedale, which is also a named party, and subsequently, through that subrogation claim, the assignee of the assignment by Titan, and they're also trying to wear their own hat. Now, Your Honor, I'll be satisfied if we just get the right parties in front of the court. So you disagree with the construction of Rule 43B that we talked about a little while ago, that that does not require a substitution? Assuming that there are some policies left to deal with. Right. I believe the Supreme Court has said very clearly that we need to have the parties that have the claims named in the case, and here we don't. Now, whether we do that and then reach the conclusion that I would urge, which is that now that we get National Union Fire in front of the court, they've dismissed their claims, or whether somehow they've reserved that by not having all that. I may make a mistake in reading the rules. It looks to me as though the FRAC rules, our rules, don't require. Okay. The Federal Civil Procedure do require, and if there's a problem with substitution of parties or nominal parties and so on, if we remand, the district judge can sort it out. Okay. Is there any difficulty with doing that, if we remand? I'm not sure. It could be resolved on remand under Rule 17. I was under the impression and understanding that the assignment had taken place after the litigation was commenced. I'm now corrected by counsel that it took place prior, and so I believe Rule 17 would apply. But the district judge would be in a position to sort that out, I guess. Yes, sir. Okay. I want to just, if you don't mind, because I think this jurisdictional issue obviously comes to the fore for us. If we don't have jurisdiction, we can't do anything, so I want to get this clarified in my mind. I'll call these the Titan policies that the National Union issued and the Kennedale policies, okay? Yes. The stipulation to dismiss, I'm just going to quote a little bit here because I want your understanding of it. This National Union fire hereby agrees and stipulates that the National Union fire is not pursuing any claim arising from the Williamsburg condominium project to any insurance proceeds from either of the mid-continent insurance policies described herein and forever releases all claims that National Union has had or could have made against plaintiff mid-continent under, and it would be the Titan policies. Okay. Then it goes on to say, nothing in this stipulation shall affect National Union fire insurance company's claims arising from policies other than the National Union fire policies referenced above. Right. So if you accept, for discussion purposes, there were the Titan policies and what I'll call the Kennedale policies. The Kennedale policies are nowhere included in this stipulation. Do you agree with that? I do agree with that. Okay. So if that's the case and under traditional subrogation rules, why would their claim be extinguished? Two reasons. One is that they don't have a claim other than contribution, and their contribution claim arises out of the assignment by Titan. And number two, which is probably even more important, that they were named as a defendant in this declaratory judgment action and have not appealed their dismissal on summary judgment. And that's why the district court did not enter that stipulation or the proposed order. So you're saying the stipulation really is of no moment because the court entered a judgment which wiped out the universe, basically. And so even though there were two sets of policies, whether or not the district court considered that, the National Union as a party was wiped out by the summary judgment. Yes, it is our position. Okay. Now, I recognize and appreciate the distinction that there are two sets of policies, but I don't think that the complaint was drafted that way, nor do I think the counterclaim even mentions that. The pleadings seem to be creeping. They just kind of go along and change as the case proceeds. It's a moving target. It is a moving target. And so past the real party and interest question, which I think is absolutely fascinating and I think is probably dispositive of getting to the merits of where we are, one of the things that both opposing counsel and whether wearing the Titan hat or the Kennedy hat or the National Union fire hat and also, interestingly enough, amicus also overlooks the fact that this is not a normal case because the summary judgment in the underlying case removed all claims except breach of contract and breach of warranty. That summary judgment order limited whatever claim there was that could be assigned by Titan and subsequently then raised through segregation or contribution to breach of contract and breach of warranty. And the question then becomes, as Judge Peckman recognized, I believe, that when we're defining the question of whether or not there's coverage, we look to an occurrence. An occurrence means there must be personal injury or property damage. This is breach of contract. It is not personal injury or property damage and, therefore, is not an occurrence. How does Yakima square with that? First of all, Yakima cement involved a mismanufacturer of concrete panels that were incorporated into a building and the question was, and if you go back to the original briefing and the original underlying determination, that the panels were not covered because there was damage to a third party's product and the DeWitt case specifically explains this subsequently, saying that because there was damage to a third party's property, that is where the occurrence is. That's what we don't have here. You didn't get past the jurisdictional issue. Yes. What is your take on Judge Fletcher's suggestion, at least as I interpret it, that this issue should really have been considered or presented to the district judge and that the district judge would be the appropriate person to consider the Yakima case and the exclusion since she never really ruled on those in the decision? I would agree with counsel that this court does have the authority to uphold the court's decision on any grounds. I understand that. He mentioned, if I understood him correctly, that you had presented and agreed that all the evidence that the district court would hear on this issue is before us in the record and in your briefs. Do you agree with that? I guess in answering that, I would say that if we were remanded, and particularly if there was a trial on the issue, undoubtedly there would be additional discovery and there would be additional things to talk about. So I guess I would disagree that everything that could theoretically be brought into the case is before the court. Do you think there's enough evidence for us, if we elect to do that on de novo review, to determine whether these exclusions apply? I believe so. Now, you said if we were to remand, holding under Yakima cement, that this is an occurrence, but nonetheless the question of exclusions has not yet been addressed, that there might be additional discovery. Now, did you mean to say that often? In fact, usually by the time you get to summary judgment, discovery is closed. But was this one of these rolling discoveries where the district judge said, listen, I know enough to decide it, at least implicitly, if I have to get to the question of exclusions and maybe we'll do some more discoveries? Is this where we are? I don't recall when the discovery cutoff was, so I can't be definitive about that. Counsel may be able to correct me, but I believe that there was additional time remaining for both parties to do discovery. And since he's raised the question about one particular business record, that's what caused me to think, well, okay, we probably ought to flesh that out. So this isn't one of these cases where discovery is closed, we're all done, and the record is what it's going to be. We can look at the record as well as the district court can look at the record. The record might be expanded before the district judge makes his decision on exclusion if that question is addressed by the district judge. That's my recollection about the discovery cutoff, yeah, yeah. And, again, I might even just say I would defer to Mr. Murphy. He may have a better memory about that. You guys must be friends. We're classmates. There you go. Does that mean you're friends? I wasn't going to answer that one. We are, of course. And we respect each other a great deal, Your Honor. Nice to see. Except in this case. Getting back to what I really think is a threshold question, which is why are we talking about an occurrence, because we shouldn't be. We should be talking about whether or not breach of contract triggers a liability policy. Now, I think if we take this through to its logical conclusion, we'd reach the conclusion that public policy would clearly state this should not be a liability policy question. For the simple reason that this is a building that was constructed by Titan, whether they used subcontractors or did it with their own hammers and saws, it doesn't matter. They are limited in their exposure because of the summary judgment to a breach of contract question. Did they breach the contract? Not were there damages to third parties, not were there any damages that are related to anything else, the economic loss rule is directly here. Economic loss rules very simply states that there is no tort of negligent construction, only a breach of contract question. And Washington law is very clear about that. I don't think there's any dispute. And so when we ask ourselves how did we get into this uncommon place, it's a contribution action between insurance companies. One insurance company makes a payment and wants a contribution action from another insurance company. My client, Midcontinent, says this is not personal injury or property damage because that is gone. That was removed when summary judgment was granted at the trial court level. But all this hinges then on the meaning of the word occurrence in the policy, right? Sure. Occurrence is defined as an accident. But before you get to the question of occurrence, the coverage, and it's right on the first page of policy section one, it covers personal injury and property damage. It doesn't say breach of contract. Yeah, but personal injury is one thing. Okay, but then property damage, property damage can come from, of course, tort or breach of contract. But we don't have that. It can. And in a normal kind of a case, maybe. If we have a, quote, occurrence causing, quote, property damage, that may or may not be covered under the terms of the policy depending on the definition of occurrence. Right. So back we are to Yakima Cement. No, we're not to Yakima Cement because we don't have a third-party injury. Remember, Yakima Cement and the subsequent DeWitt case are both talking about incorporating defective products into the building. And the insured in both cases were subcontractors. And the subcontractors provided deficient, defective products that were incorporated. In the DeWitt case, that was the pile driving case. And in the Yakima Cement, that was the tilt-up concrete panel case. Both of those products were incorporated in. And DeWitt specifically talks about Yakima Cement and says, we're not here to discuss the question of coverage for the defective products themselves. Those aren't covered. We're here to talk about whether the damage to the other party's properties would be covered. And that's where the court found that there was an occurrence. I want to come back for just a moment, counsel, to what you said a minute ago, and that was, if I understood it correctly, that the district court had disposed of this action because the summary judgment that was granted covered basically Titan Constructions' subrogate on everything. And I'm looking now at Judge Peckman's order. And in the last sentence it says, Mid-Continent Casualty Company has no duty to indemnify Titan Construction Corporation or its assigns under. And then it names two policies here. One is 04GL4092106 or insurance policy XS10952. Are those all the policies we're talking about? Does that cover what I've called, for want of better terms, the Cannondale policy and the, I guess, the Titan policies, I think I called them. Are those the policies? No, we're talking about those. Judge Peckman is talking about the Mid-Continent policies. Okay. So Mid-Continent insured Titan, and so did National Union Fire. Right. Different time periods. Okay. So given the fact that the judge was quite specific about the policies that she was including in this, why then are you saying that the issue of whether there were two sets of policies is irrelevant because it covered the universe for National Union? Number one, the judge is talking about my client's policies and saying that we have no duty to indemnify under the Mid-Continent policy. Right. And therefore, since there's no duty to indemnify, there's nothing for National Union Fire to contribute against. Right. Number two, I don't think she, unless I'm misremembering, I don't believe she made a specific ruling about the National Union Fire policies because National Union Fire was a named party but did not participate in the argument with respect to those policies. Okay. Wherein, then, is the district court's judgment that you think eclipses your friend's company's claim in this action? When we submitted the stipulation and order by National Union Fire, it was after the issue of summary judgment was decided and after the order of summary judgment was entered. Three months after the submission of that stipulation and proposed order, the court kicked it back and refused to enter it on the grounds that the time for appeal on the summary judgment had already expired and that because National Union Fire had not appealed that the issue was moot. Again, I appreciate that. I'm simply saying I'm looking at the order now, and the order says what the order says, and it does not appear, looking at the language, to cover all of the policies that are in issue. I'm going to ask your friend here what he thinks in terms of that as well, but I'm interested in your take on it. These are not all the policies, right, the ones that I mentioned? No, that's not all the policies. Correct. I would agree that it becomes somewhat confusing because we've got different time periods, and one of the issues about known loss that we haven't gotten into at all is that my client's policy began in 2002 and that business record from the Condo Owners Association predates that by three years. And so also the opening brief and the mediation letter from Kennedale specifically states that they were aware of problems that began as early as one year after substantial completion, which would mean Certificate of Occupancy in 1998, substantial completion then also. Is it a leaking bathtub? Well, it doesn't say leaking bathtub, Your Honor. It says leaks, and that's the issue that I was responding to earlier, that if we needed to flesh that out, I suppose we could. I mean, leaks are leaks, and the important question was Titan was on site responding to some complaint about leaks, and so the issue about known loss at the time the policy was issued came up. I'll tell you, this introduces some confusion. I'm glad we have a little confusion in this case because everything else is absolutely clear. Well, I'm glad. The issue, as I would suggest to the Court that we would focus on, is that this is a unique situation. This is not the normal case where the insured Titan is before the Court saying, we are looking for property damage coverage because our building leaked on somebody's painting or our wall fell on somebody's car. This is a situation where they're saying, we did a lousy job of building this, and we want the insurance company to make it right. We hired crummy subcontractors who used substandard materials and violated the building codes, and the insurance company ought to foot the bill. In other words, they want a performance warranty. They want a quality warranty. They don't want liability coverage. They want something they didn't pay for. Well, we all like something we didn't pay for. I mean, I go to Costco and go noshing and enjoy that, but that doesn't mean I could force Safeway to do the same thing. If somebody wants to make an insurance decision like National Union Fire did to make a policy decision, they're going to pay a coverage. That doesn't mean that my client's policy also has to make the payment errors. Okay. Thank you. Thank you very much, Mr. Miller. Mr. Barefoot. Your Honors, let me try to clear up a couple of things with regard to this policy. Yeah. If you look at the complaint, which is excerpt from the record, starts on page 1, and then you go to page 3 of the excerpt of the record.  It's paragraph 1.11, where it says, National Union insured, tightened, and it lists certain policies. These are entirely different policies, obviously, than the ones referred to by the district court in the summary judgment, right? The ones that are referred to in the summary judgment are not the National Union, they're the mid-continent policies. But if you look at this excerpt, you'll see that these are the policies that insured tighten in the case. And then if you look at the stipulation that you referred to, those are the same policies. So the stipulation applies to the policies that were in the lawsuit, which are the ones that are referred to, or, excuse me, covered tighten. They are not the ones that covered Kennegale, which is the ones that are now bringing the summary judgment. So you're saying those are the ones that were accepted out of the stipulation? Right, exactly. Not the ones in the complaint, but the Kennegale policies are the ones that are accepted by the stipulation saying that this covers no other policies other than the ones that are listed in the previous paragraph. Right, so from your perspective, any way you cut it, your lawsuit remains alive because the district courts did not specifically refer to the policies, except for the mid-continent policies. The national union policies that are here in the complaint are not referred to in the summary judgment. And the settlement, the stipulation, if you will, was never accepted by the district court. But even if it was, there's an exception in the stipulation from your perspective that leaves what we'll call the Kennedale policies still alive. That's correct. That's the language that you quoted, Your Honor. Right. I'd like to also point out on the breach of warranty and breach of contract issue is the issue comes down to whether there is an accident, which is whether there is an occurrence or not. And the court should not be looking at the causes of action or the theories of liability. For whether or not there's coverage under coverage A under the mid-continent policy, you have to look at the injuries. And in this particular case, the injury is property damage. And I think that in the Kitsap County v. Allstate case, which is a Washington Supreme Court case, they quoted the Northern District of Mississippi in Great Northern Nicosia Corporation v. Aetna in terms of this distinction. The Allstate court wrote, Personal injury coverage is a theory-based insurance coverage. It defines its coverage in terms of offenses or theories of liability, not in terms of injuries sustained by the plaintiff. Comprehensive general liability insurance is the opposite. It is an injury-based insurance, which defines its coverage in terms of the certain injuries sustained and not in terms of the theories of liability. And that is exactly what we have here, is the district court seemed to look at the theories of liability and the causes of action and said there was no cause of action for breach of contract or breach of warranty. And yet, for this type of policy, we're not talking about a personal injury type of policy. That's coverage B under the mid-continent policy. What difference does it make that there was a change in the GCL policy in 1986? Do any of these cases, are they irrelevant because of that, or are they all right on point? That change has no impact on this case, Your Honor. The changes that they made really doesn't make any difference, except as to the exclusions. And I think that's what the amicus brief was talking about, is that there are exclusions that were changed in 1986. And one of them, I'm not sure it changed in 1986, but it certainly, by the time the mid-continent policy came out, it excluded or, excuse me, it accepted out real property from the product. So whenever all those cases are talking about the real product, or, excuse me, about you can't have coverage for damage to the product itself, those don't apply because mid-continent chose to use a definition that it, that accepts out real property, which means the condominiums are not covered. My time's up. If you have any questions, thank you, Your Honor. Mr. Miller, I, Mr. Barefoot, thank you very much for your helpful arguments in this case. The case of mid-continent casualty versus Titan Construction Company is now submitted for decision, and we are in adjournment for the day.
judges: Thompson, Fletcher, Smith